UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IMPACT HOLDINGS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.   1:25-CV-134-HAB |
| | ) | |
| COUPLED PRODUCTS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This case is in its infancy but is already a contentious mess. Defendants removed the case from state court (ECF No. 1), certifying that this Court has jurisdiction, only to move to dismiss the case a month later for the Court's *lack* of jurisdiction (ECF No. 15). Plaintiff has lobbed multiple arguments of bad-faith dealings, including in a Motion for Attorneys' Fees (ECF No. 25) which Defendants then contend amounts to no more than an impermissible surreply. (ECF No. 29). Allegations of gamesmanship and misrepresentations to the Court as well as demands for withdrawal have been flung from all sides, leaving the Court to wade through the muck when determining the fundamental question of whether it has jurisdiction and what to do if it does not.

For the reasons set forth below, the Motion to Dismiss will be denied and the case remanded to the Whitley County Superior Court. Plaintiff's request for attorneys' fees will be denied.

**I.    BACKGROUND**

This environmental case centers on a plot of land in Columbia City, Indiana, which has been under investigation by the Indiana Department of Environmental Management ("IDEM") for

potential hazardous ground contamination from decades of industrial manufacturing by a host of landowners.

In August 2023, IDEM sent a Notice of Liability and Information Request letter to current and previous owners of the land, notifying all that the agency had determined that hazardous substances had been released on the land and that each owner was a Potentially Responsible Person and thus liable for response action. (ECF No. 20-1 at 2–8). In February 2025, current landowner Impact Holdings, LLC, sued the previous landowners—Coupled Products LLC, HuthOne LLC, Dana Incorporated, RTX Corporation, and Lear Corporation EEDS & Interiors (collectively "Defendants")—in state court under Indiana's Environmental Legal Actions ("ELA") statute, Ind. Code § 13-30-9-2. (ECF No. 4). The Complaint alleges that Impact Holdings is not responsible for the contamination and that it has suffered harm from the contamination "in the form of response costs, expenses, and legal fees, among other things, associated with investigating and addressing continuing contamination and environmental issues alleged by IDEM at the Site." (*Id.* at 4 ¶ 25).

On March 24, 2025, Defendants—led by RTX and Lear[1]—removed the case to this Court, invoking federal diversity jurisdiction under 28 U.S.C. § 1332 (ECF No. 1), a move which Plaintiff did not oppose at the time. A month later, Defendants filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing the Court lacks jurisdiction because Plaintiff failed to allege a cognizable ELA injury and thus does not have Article III standing. (ECF Nos. 15, 16). Plaintiff opposes the Motion to Dismiss, claiming the Complaint adequately alleges an injury and, if not, that the proper remedy is remand to state court, rather than this Court dismissing the complaint outright. (ECF No. 20). Additionally, claiming bad faith in the removal proceedings, Plaintiff has

---

[1] Defendant Dana Incorporated joined in RTX and Lear EEDS' Motion to Dismiss (ECF No. 17) but separately filed a response to Plaintiff's Motion for Attorney's Fees (ECF No. 29). Additionally, Defendants Coupled Products LLC and HuthOne LLC have failed to make appearances before this Court. Nevertheless, for ease of reading, the Court will refer to the Defendants collectively, as those who have appeared are in agreement.

2

requested attorneys' fees under 28 U.S.C. § 1447(c) (ECF No. 20 at 11) and separately moved for attorneys' fees as sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 (ECF No. 25).

## II. STANDARDS OF REVIEW

### a. Motion to Dismiss

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

### b. Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 Sanctions

Federal Rule of Civil Procedure 11 "permits a court to sanction an attorney for a pleading or other document that (among other potential transgressions) is presented for an improper purpose or makes factual representations that are without reasonable evidentiary support." *Johnson v. Cherry*, 422 F.3d 540, 548 (7th Cir. 2005) (citing Fed. R. Civ. P. 11(b)). Under Rule 11, a court "may impose sanctions on a lawyer who submits frivolous legal arguments—those not warranted 'by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law

or for establishing new law.'" *Bell v. Vacuforce, LLC.*, 908 F.3d 1075, 1079 (7th Cir. 2018) (quoting Fed. R. Civ. P. 11(b)(2)).

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Johnson*, 422 F.3d at 548. Objective bad faith is a prerequisite for awarding sanctions under § 1927. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). And the moving party must show "extremely negligent conduct, like reckless or indifferent conduct." *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994).

### III.  DISCUSSION

Defendants seek dismissal of the Complaint, arguing Plaintiff lacks standing and thus the Court lacks subject matter jurisdiction. (ECF No. 16). Plaintiff contends it does have standing, or else the Court should remand the case to state court, rather than dismiss. (ECF No. 20). Plaintiff also asserts it is entitled to attorneys' fees under 28 U.S.C. § 1447(c), 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11.  (ECF Nos. 20, 25).

#### a.  Article III Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. Const. art. III, § 2; *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). "There is no case or controversy if the plaintiff[s] lacks standing to challenge the defendant's alleged misconduct," *Diedrich v. Ocwen Loan Servicing.*, LLC, 839 F.3d 583, 587 (7th Cir. 2016), and generally "the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 430–431 (2021). That said, "[a]s the party invoking federal jurisdiction," the Defendants in a removal action "ha[ve] to establish that all

4

elements of jurisdiction—including Article III standing—existed at the time of removal." *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018).

To establish Article III standing, a party must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). At the pleading stage, standing is established "by clearly pleading allegations that plausibly suggest each element of standing . . . ." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (internal citations omitted). Conclusory allegations or mere references to "actual damages" alone are insufficient. *See, e.g., Collier*, 889 F.3d at 896 ("A mere reference to 'actual damages' in the complaint's prayer for relief does not establish Article III standing.").

The heart of this debate is in the first requirement: whether Plaintiff's Complaint alleges a sufficient "injury-in-fact" to support an ELA claim. Though the parties quibble over who is supposed to establish Article III standing at this stage—which, as the Seventh Circuit made clear in *Collier*, 889 F.3d at 896, is the Defendants' burden upon removal to federal court—this Court has an independent obligation to ensure that it has subject matter jurisdiction over a case before deciding the merits. *See United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013). But no matter whose burden, Plaintiff does not have Article III standing here.

Indiana's Environmental Legal Action Act, codified at Ind. Code §§ 13-30-9-1 through -8, provides that a "person" may:

> regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action

5

>against a person that caused or contributed to the release to recover reasonable costs
>of a removal or remedial action involving the hazardous substances or petroleum.

I.C. § 13-30-9-2. Plaintiff seeks compensation "in the form of response costs, expenses, and legal fees, among other things, associated with investigating and addressing continuing contamination and environmental issues alleged by IDEM at the Site." (ECF No. 4 at ¶ 25).

Defendants argue that Plaintiff lacks standing because it has not yet incurred remediation costs and therefore cannot show an injury. In support, Defendants point to the Complaint's lack of assertions that Plaintiff has incurred recoverable costs as well as an alleged phone conversation in which Plaintiff's counsel confirmed that Plaintiff had not yet incurred any cleanup or remediation costs. (ECF No. 16 at 3–4; ECF No. 16-1, Eaton Declaration). Plaintiff responds with two points: first, that the NOL alone gives rise to a cognizable injury because it is an enforceable government cleanup order; second, that even in the absence of the NOL, the "legal fees" Plaintiff has taken on in addressing the NOL are recoverable costs creating an injury. But neither of Plaintiff's arguments are persuasive.

Generally, both Indiana courts and the Seventh Circuit have held that an ELA cause of action does not accrue until a plaintiff incurs cleanup costs, because the ELA is an "action for the *recovery* of cleanup costs, not an action for damage to real property." *Elkhart Foundry & Mach. Co. v. City of Elkhart Redevelopment Comm'n*, 112 N.E.3d 1123, 1128 (Ind. Ct. App. 2018) (emphasis added); *see also Bernstein v. Bankert*, 733 F.3d 190, 220 (7th Cir. 2013) (making clear that an "injury" under the ELA is "any costs incurred under a cleanup obligation imposed by the EPA"). That said, the *Bernstein* court, citing the Indiana Supreme Court, has also clarified that an enforceable government cleanup order can give rise to a cognizable ELA claim. *See Bernstein*, 733 F.3d at 220 ("[A]n obligation to pay may be considered an 'injury' for statute of limitations purposes even before it gives rise to an actual monetary loss."); *Pflanz v. Foster*, 888 N.E.2d 756,

6

759 (Ind. 2008) (holding the injury under a similar Indiana environmental statute accrues at the time of a government order imposing a cleanup obligation). Absent an enforceable order or evidence of cleanup expenses, however, there is no injury-in-fact and a plaintiff will not have standing to bring an ELA claim. *See Millman v. RTX Corp.*, No. 1:16-CV-312-HAB, 2024 WL 4986613, at *9 (N.D. Ind. Dec. 5, 2024) ("[W]here, as here, Plaintiffs are not under an EPA or state order to commence cleanup activities, cleanup costs are required to show injury for standing under the ELA.").

Plaintiff asserts that the NOL letter is just such an order. But Plaintiff provides no authority supporting that argument,[2] nor can the Court find any case even mentioning that type of letter, let alone its enforceability or lack thereof. And compared to the orders at issue in *Bernstein*, the NOL appears prelude to an actual legal cleanup obligation. In *Bernstein*, the "obligation to pay" was found in two Administrative Orders by Consent ("AOCs") from the Environmental Protection Agency ("EPA") in which the agency and respondents agreed to specific obligations and responsibilities for cleaning up the site as well as delineating how costs and reimbursement would function. 733 F.3d at 197.

By contrast, the NOL letter here— a *Notice* of Liability and Information *Request*—reads as merely a preliminary step in a longer government process, with the Plaintiff's responsibilities and obligations only speculative at this stage. Indeed, the only legal obligation mentioned in this

---

[2] In its Motion for Attorneys' Fees, Plaintiff cites a single Indiana Court of Appeals case for its assertion that the NOL is an enforcement action creating legal obligations. (ECF No. 26 at 5 (citing *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 933 (Ind. Ct. App. 1999)). But the Court does not read that case to be as definitive as Plaintiff would have it believe. Not only is it unclear from that case what "cleanup orders" were issued there—meaning it is impossible to say whether they are akin to the NOL letter here—the *Travelers* court did not say the orders there created a legal obligation to pay, but referred to the orders as a process which *might* result in a legal obligation to pay. *Id.* at 934 ("[T]he provision for the company to have the 'right and duty to defend any suit seeking those damages' would indicate to the ordinary person that the company must defend against any proceeding or process that *could* result in the insured being 'legally obligated to pay.'"). Ultimately, that one case is far from conclusive that something like the NOL letter here is an enforceable order under the ELA, and the Court rejects Plaintiff's assertion that Indiana courts "have long recognized" that these letters create enforceable obligations. (ECF No. 26).

letter is a requirement "to furnish IDEM with any information relating to ownership and operations at the Site and the use of the hazardous substances, including how it was used and where it was used at the Site and any knowledge of spills or disposal," as required by Indiana Code section 13-25-4-5. (ECF No. 20-1 at 5). While the NOL lists certain demands—a demand for response action; a demand for reimbursement—those demands are not necessarily binding, enforceable orders, especially when read next to other sections listing the enforceable orders which the agency may seek or enter into later. (*See id.* (outlining possibility of seeking a Commissioners Order to undertake response); *id.* at 7 (detailing the potential for an administrative Agreed Order (AO) specifying how and when response actions will be conducted)). While there may be no dispute that IDEM demanded Plaintiff initiate an environmental response with the NOL, Plaintiff has failed to establish that the NOL is on par with the enforceable government orders contemplated by the Seventh Circuit in *Bernstein*.

Because the NOL does not serve as an enforceable order to commence cleanup activities, Plaintiff must have incurred some cleanup costs to show injury for standing under the ELA. *See Millman*, 2024 WL 4986613, at *9. To date, the only expense Plaintiff alleges it has incurred is legal fees associated with counsel "writing letters to Defendants and engaging in other unsuccessful attempts to persuade Defendants to comply with the NOL." (ECF No. 20-2 at 3). But Plaintiff similarly brings in no case law that allows standing to be conferred based solely on legal fees, and precedent points to the contrary. While Plaintiff is correct that attorneys' fees in prosecuting an ELA claim may be awarded when a claim is *resolved*, *see* I.C. § 13-30-9-3(a)(6), an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). And though Plaintiff in multiple briefs argues these legal fees "were incurred prior to this

8

litigation" and thus were not "litigation fees," (*see* ECF No. 31 at 3), that argument undercuts its own basis for why it believes legal fees are recoverable costs under the ELA statute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) ("Respondent finds itself, in other words, impaled upon the horns of a dilemma: For the expenses to be reimbursable under the statute, they must be costs of litigation; but reimbursement of the costs of litigation cannot alone confer standing."). Plaintiff simply cannot have it both ways.

Finally, Plaintiff makes much to do about why "environmental professional costs" are part of the remediation process, but fails to point to *any* evidence that would indicate such costs have been incurred here. Though citing to counsel's declaration that Plaintiff has "incurred attorneys' fees, environmental consulting bills, and other costs of environmental response related to the NOL," (ECF No. 20 at 7), that declaration *only* refers to legal fees (ECF No. 20-2). And even if Plaintiff had submitted some evidence of expending environmental professional fees—such as an invoice from an expert—those fees alone likely would not confer standing. *See Millman*, 2024 WL 4986613, at *10; *Alvey v. Gen. Elec. Co.*, No 3:20-CV-263, 2023 WL 8372044, at *3 (S.D. Ind. Oct. 30, 2023) ("[I]nvestigative costs incurred by a private party after the [agency] has initiated a remedial investigation . . . are not considered necessary because they are 'duplicative' of the work performed by the [agency]."). The NOL letter makes clear that this site has been under investigation by IDEM in some form or another for thirty years (ECF No. 20-1 at 4), meaning any consulting services—if any have been incurred by Plaintiff—began many years after IDEM began its oversight. These purported fees would no doubt be "costs of litigation," but expert fees alone similarly would not confer standing.

Despite Plaintiff's loud and repeated assertions to the contrary—including the perplexing notion that the Complaint "lists its *exact* costs" by referencing general "response costs, expenses,

9

and legal fees, among other things associated with investigating and addressing continuing contamination and environmental issues" (ECF No. 20 at 7 (emphasis added))—the Court has seen no evidence of any incurred recovery or remediation costs to confer Article III standing. And because Plaintiff lacks standing, this Court does not have jurisdiction.

While Defendants asked for the claim to be dismissed should the Court find Plaintiff lacks standing, Plaintiff is correct that the proper procedure is remand, rather than dismissal. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Collier*, 889 F.3d at 895 (explaining that remand is required when jurisdiction is lacking).

Here, Plaintiff chose to litigate its ELA claim in state court, and regardless of whether federal jurisdiction was colorable at the time of removal, with the Court's finding that it has no jurisdiction, it must remand the case to the Whitley Superior Court.

### b. Attorney's Fees

Plaintiff has also requested Attorney's Fees, both in its Response to Defendant's Motion to Dismiss (ECF No. 20), as well as in a separate Motion for Attorney's Fees (ECF No. 25). The Court declines to award such fees.

#### i. 28 U.S.C. § 1447(c) Attorneys' Fees

Section 1447(c) provides that, following remand, a district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as the result of the removal." 28 U.S.C. § 1447(c). In general, "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007); see also *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (per curiam) (affirming award

of fees and costs to plaintiff where there was no objectively reasonable basis for federal jurisdiction or removal); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (affirming award of fees and costs where "[r]emoval was unjustified under settled law."). Whether to award costs and fees is within the district court's discretion, however, and § 1447(c) encompasses neither a bias in favor nor a presumption against fee awards. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 137 (2005).

The Court finds it was reasonable for Defendants to assert that removal was proper. While the Complaint was bare bones with respect to alleged damages, it still *might* have been able to support Article III standing with its references to "response costs, expenses, and legal fees, among other things, associated with investigating and addressing continuing contamination and environmental issues alleged by IDEM at the Site." (ECF No. 4 at ¶ 25.) But the Defendants' Motion to Dismiss made clear that it was the phone conversation with Plaintiff's counsel on March 24, 2025, that confirmed Plaintiff had not yet incurred any recovery or remediation costs. (ECF No. 16; ECF No. 16-1, Eaton Declaration). And while Plaintiff points to the suspect timing of that conversation—allegedly the same day as Defendants filed the Notice of Removal (ECF No. 1)—it fails to show that the phone conversation occurred *before* Defendants removed the case to federal court. Without such a showing, there is no reason to think Defendants acted in bad faith in removing.

To be sure, Plaintiff is correct that courts in this circuit and others have frowned upon defendants invoking then immediately disavowing federal jurisdiction in hopes of outright dismissal. *See, e.g., Collier*, 889 F.3d at 896; *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914–15 (N.D. Ill. 2016) ("In short, it should have been obvious to defendant, based on well-settled law, that with no party asking for the merits of plaintiff's claim to be decided in federal court, and

both sides arguing against federal jurisdiction, the only possible outcome was for the case to end up right back where it started: in state court."); *Cumberland Cnty. v. Chemours Co.*, 608 F. Supp. 3d 294, 297 (E.D.N.C. 2016) ("Defendants cannot use the bare requirements of section 1332 to get a foot in the door of a federal court and thereby obtain a clean slate on which to seek dismissal for lack of subject-matter jurisdiction."). But while the Defendants' actions here may raise eyebrows, they have conceded to remand if the Court finds the Plaintiff lacks standing (ECF No. 23 at 6), and the Court is unpersuaded that the Defendants have "reveal[ed] a broader pattern of obstruction and delay," as Plaintiff declares. (ECF No. 20 at 12).

Because Plaintiff has not shown there was no objectively reasonable basis for removal, *see PNC Bank*, 763 F.3d at 654, the Court declines to award attorneys' fees upon remand under 28 U.S.C. § 1447(c).

*ii. Rule 11 and 28 U.S.C. § 1927 Attorneys' Fees*

Finally, Plaintiff asserts that it is entitled to sanctions in the form of attorneys' fees incurred in responding to Defendants' Motion to Dismiss, which Plaintiff says "violated Rule 11 and 28 U.S.C. § 1927 by misrepresenting the law and facts of the case." (ECF No. 26). Though the standards for sanctions are different for a Rule as opposed to a statutory violation, Plaintiff's argument declines to distinguish between the two but ultimately fails to persuade the Court the sanctions are warranted under either.[3]

The Court agrees with Defendants that Plaintiff's Motion treads no new ground, points to no sanctionable behavior, and ultimately amounts to an impermissible surreply because it is merely "another attempt to point to the weaknesses in the defendant's brief, and ignores that it is the

---

[3] The parties also quibble over whether Plaintiff followed the proper procedure for notifying Defendants of and then requesting Rule 11 sanctions. But because the Court finds Plaintiff has presented no persuasive argument under Rule 11, it need not address any alleged procedural failures.

12

court's duty to weigh the arguments, distinguish cases, and apply the law." *Lafayette Life Ins. v. City of Menasha, Wis.*, No. 4:09-CV-64, 2010 WL 4553667 (N.D. Ind. Nov. 3, 2010). As mentioned above, Defendants' position switch as to this Court's jurisdiction may be dubious, and the Court reminds litigants that this kind of strategy "has resulted in a significant waste of federal judicial resources, much of which was avoidable." *Collier*, 889 F.3d at 897. But Plaintiff has presented no evidence of Defendants engaging in frivolous filing, bad faith tactics, or reckless and indifferent conduct. Indeed, if there have been any "misrepresentations" made to the Court—about the facts, relevant case law, or otherwise—those misrepresentations can be found only in the Plaintiff's filings, as addressed herein.

Because Plaintiff has not persuaded the Court that sanctions are warranted under Rule 11 or § 1927, the Court declines to award attorneys' fees under either.

## CONCLUSION

For these reasons, the Defendant's Motion to Dismiss (ECF No. 15) is DENIED, Plaintiff's Motion for Attorney's Fees (ECF No. 25) is DENIED, and the case is remanded to the Whitley Superior Court.

SO ORDERED on August 15, 2025.

       s/ Holly A. Brady
       CHIEF JUDGE HOLLY A. BRADY
       UNITED STATES DISTRICT COURT